JOHN RANDEL, jun'r. *vs.* The PRESIDENT, DIRECTORS and COMPANY of the CHESAPEAKE and DELAWARE CANAL.

Any *agreement* under seal is a *covenant*.

The language of a covenant in a contract between several, is to be applied to the party to which it reasonably belongs.

The whole contract is to be taken together.

That construction is to be prefered which will make the whole instrument operative.

If there be ambiguity, the words of a covenant are to be taken most strongly against the covenantor.

In covenant, the breach may be assigned in the words of the covenant, where such general assignment amounts to a breach.

Less particularity is required where the matter rests in the knowledge of the other party.

Enough must be placed on the record to show that the covenant is broken, and that the plaintiff has a cause of action.

After argument on general demurrer, and the opinion of the court delivered, leave to withdraw the demurrer and plead over *refused*.

COVENANT. Demurrers to the seventh and eighth counts of the narr.

These demurrers were argued at the present term by *Frame*, Attorney General, and *Walter Jones*, for the defts., the demurrant; and *J .M. Clayton, C. J. Ingersoll, Rogers* and *Read, jun.*, for the plaintiff.

The narr set out the following contract between Randel and the Canal Company, the whole of which is inserted here for future reference, though a part only, two clauses thereof, were immediately involved in the present argument.

"Articles of agreement made and concluded the twenty-sixth day of March, in the year 1824, between John Randel, junior, of the state of New-York, civil engineer, of the first part, and the Chesapeake and Delaware Canal Company of the second part.

The party of the first part for himself, his executors, administrators and assigns, covenants and agrees to and with the party of the second part, to excavate, embank and construct in a good substantial and workmanlike manner, all that part of the Chesapeake and Delaware canal included in sections number one, two, three, four and that part of section number five, which extends from station number two hundred and ninety-eight, to number three hundred seventy-three, as the same are protracted and defined on a certain map and estimate prepared by the party of the first part, and now in the possession of the party of the second part, together with the proposed

harbor on the river Delaware. The canal and banks to be so constructed, that the water may be in all places at least sixty feet at the surface or top water line, and thirty-six feet at the bottom in width, and eight feet deep. Each bank to be raised one foot above the top line of the highest tide heretofore known, except on the summit level, where it shall be from two to seven feet above the water line: and such a slope shall be preserved on the inner side both above and below the water line (not exceeding two feet base to one foot perpendicular elevation,) as the engineer of the company for the time being, shall direct. The towing path shall be on the north side of the canal: its upper surface twelve feet wide: the upper surface of the bank on the opposite side of the canal from the towing path, six feet wide. Both banks shall be constructed of the best earth which the adjoining excavation will give, in a workmanlike manner with a slope on their outer sides, not less than that hereinbefore prescribed for their inner sides.

*(Covenant to pay.)* And the party of the second part agrees to the party of the first part his executors, administrators and assigns for completely performing this contract the sums which are stated as the cost thereof in the said estimate of the party of the first part, under the conditions and provisions expressed in the annexed schedule *(semi monthly.)* payment to be made every fortnight according to the said schedule for the work which the engineer of the Company shall certify to have been actually done by the party of the first part. *(Ten per cent. for contingencies.)* Provided however that no part of the amount of ten per cent specified in the estimate aforesaid to be for contingencies on the whole contract shall be payable to the party of the first part until the final and absolute completion on his part of the whole of this contract. *(In case of Randel's death.)* And in case of the death of the party of the first part pending this contract, and before default or delinquency on his part, and this contract is thereby determined, such portion of the said ten per cent. shall be paid to his representatives, as upon consideration of all circumstances of difficulties overcome by him and future security of the company for the completion of the unfinished residue at the cost specified in the said estimate shall be just and reasonable. The certificate of the principal engineer of the company for the time being on this point to be final and conclusive between the parties. *(Revision of prices.)* The object of the parties being to fix such a rate of payment as to secure the company against future delinquency and at the same time enable the contractor to make progress in his work; it is further agreed, that it shall be competent to the parties at any time between the first and seventh of June next to revise and remodel the schedule annexed and change the rate of payment; in case of difference of opinion between the parties as to the proper revised prices the engineer of the company for the time being shall be an umpire, and his certificate on the matter final and conclusive. If the schedule is not so revised the prices therein stated shall be final and established.

*(Inspection covenant.)* And the said works during their progress shall be carefully examined and inspected, and to prevent misunderstanding and disputes it is hereby agreed that Benjamin Wright,

esquire, or some other competent engineer to be selected by the party of the second part, shall be the inspector of the said works *(Estimates &c.)* and shall estimate the number of cubic yards of excavation and also of embankment, and his estimate thereof when certified to the party of the second part shall be final and conclusive between the parties. *(Abandonment.)* And it is further agreed that if the opinion of the engineer in chief for the time being in the employ of the party of the second part shall be that the party of the first part refuses or unreasonably neglects to prosecute this contract, such engineer may certify the same to the said party of the second part, and on his certificate, the said party of the second part shall have the power of determining that he has abandoned it; and such determination shall altogether exonerate the said party of the second part from every obligation imposed on them by the said contract, except to pay as aforesaid for work already done; and they may immediately thereafter proceed to dispose of the subject matter of this contract in the same manner as if this contract had never been made; *(Deviations.)* and the party of the first part further agrees that during the progress of the work he will from time to time conform to such deviations from the present line of canal, and to such alterations in the form, slope and dimensions of the banks, towing paths or any other of the said works, as the said party of the second part or their engineer shall direct; provided that the said party of the second part shall pay to the said party of the first part such additional sum as the engineer of the party of the second part for the time being shall certify to be a fair compensation for any additional expense incurred by the said party of the first part by reason of such deviations or alterations. And it is further agreed between the said parties that whenever this contract in the opinion of the inspector hereinbefore described is completely performed in every respect by the said party of the first part the said inspector shall certify the same in writing under his hand together with his estimate of the number of cubic yards of excavation and also of embankment: and the said party of the second part shall within thirty days after notice of such certificate pay to the said party of the first part the sum which according to this contract and the said estimate shall be due to him including therein the ten per cent. reserved for contingencies as aforesaid.

*(Prevention.* 🖙*Breach of this clause assigned in the* 8*th count.)* And it is further agreed as aforesaid that in case the party of the first part shall, from the default of the party of the second part in any, particular be prevented from pursuing the due and best mode of executing this contract, or from entering upon or flooding lands for that purpose, the pecuniary damage sustained by him in consequence thereof shall be certified by the engineer of the party of the second part for the time being; and, on his certificate, which shall be final and conclusive between the parties, the party of the second part shall make to the party of the first part such reasonable compensation and allowance as by the said certificate may be ascertained and fixed.

*(Time covenant.* 🖙*Breach of this clause assigned in the* 7*th count.)* And it is further understood and agreed as aforesaid that the time within which it shall be incumbent on the said party of the first

part fully to perform and complete the said contract shall not be taken to be less than four years from and after the first day of May next ensuing, and that upon the completion of the same he shall deliver over the work and canal into the exclusive charge of the said party of the second part free from all incumbrance whatsoever.

*(Umpirage.)*  And lastly to prevent and avoid all litigation between the parties it is agreed and stipulated that in case of dispute or difference of opinion between the said parties as to any point whatsoever connected with or in any manner affecting this contract or the execution thereof, the engineer in chief for the time being in the employ of the party of the second part shall be the umpire and judge between the parties, and his certificate in writing shall be a final and conclusive determination of the matter."

*Schedule of prices referred to in the preceding contract.*

For section No. 1. from the river Delaware to station No. 8, twenty-nine chains in length—price for the section twelve and a half cents per cubic yard—ten cents only per cubic yard for all excavation to within two feet of bottom, and the balance when the section is completed.

If the contractor shall remove the surplus earth of excavation and place it in proper form to construct a harbor according to the plan proposed by him, for such earth so removed and placed he shall receive three cents additional per cubic yard, and when the same shall be secured by stone he shall receive for every cubic yard so placed and secured one cent further additional.

For section No. 2, from station No. 8, to station No. 24—thirty-two chains in length—price for the section fifteen cents per cubic yard; fourteen cents only per cubic yard for all excavation to within two feet of bottom and the balance when the section is completed. All the surplus earth of excavation of this section shall be deposited in such places as shall be directed to form a harbor as mentioned in in section No. 1.  For every cubic yard of earth so deposited he shall receive four cents additional, and when secured with stone he shall receive the further sum of one cent additional.

For section No. 3.  From station No. 24 to station No. 166, at St. George's milldam, two hundred and eighty-four chains in length —price for the section twelve and a half cents.  For all earth excavated and placed in bank as required to within two feet of bottom, eight cents, and *when* any half mile is completed the balance is to be paid.

Note.  The contractor shall at all times excavate to the bottom if in the opinion of the committee of works it can be done with good economy.

For all drains, extra embankment according to the project of Mr. Randel, the prices to be paid from time to time to be those estimated and reported by him it being understood that the work on back drains is to be paid only for the part finished, and on embankment as it is made allowing reasonably for settling fully and becoming more solid and permanent.

For section No. 4. from station No. 166 to station No. 298. —— chains in length, price for the section fourteen cents per cubic yard. All earth excavated and removed so as to form part of towing path

through the millpond, fourteen cents per cubic yard—and all other earth excavated, but not so removed for the constructing of the towing path unless excavated from within two feet of the bottom, eleven cents per cubic yard and the balance on the completion of the section; if excavated from within two feet of the bottom though not used for towing paths, fourteen cents per cubic yard.

For section No. 5, from station No. 298 to station No. 273, —— -chains in length—price for the section —— cents per cubic yard. For all earth removed from surface to ten feet deep sixteen and seven-tenths cents per cubic yard.

| below 10 not exceeding 20 feet deep | 22½ | |
|---|---|---|
| 20 " 30 " | 28 | |
| 30 " 40 " | 33½ | |
| 40 " 50 " | 39 | per cubic yard. |
| 60 " 60 " | 44½ | |
| 60 " 70 " | 50 | |
| 70 and downwards | 61 1-10 | |

It is understood that this graduation of price is made expressly to conform to the difference in labor and to be so estimated when done as that the whole excavation of this section shall not exceed twenty-five cents per cubic yard for the whole section. In order to induce the contractor to remove the earth as much as possible by dirt boats so as to form from the excavated earth a good towing path on St. George's millpond twelve feet wide on top and with proper slopes it is agreed that in addition to the prices above stated for excavation there shall be allowed for the first ten feet thirteen cents per cubic yard of earth so deposited where there is a deficiency of excavations to form the towing path; and for the earth between ten and twenty feet five cents for every cubic yard of earth so removed and deposited: provided that in no case shall any earth be so estimated as to make the whole excavation when done to exceed twenty-five cents per cubic yard, including all deposited in the millpond."

The seventh count of the narr after setting out the contract, assigned a breach of the following clause:

"And it is further understood and agreed as aforesaid, that the time within which it shall be incumbent on the said party of the first part, fully to perform and complete the said contract, shall not be taken to be less than four years from and after the first day of May next ensuing."

(*7th Breach.*) The breach was assigned in the following words:

"Nevertheless the said, The Chesapeake and Delaware Canal Company did on the first day of October, A. D. 1825, to wit: at, &c., and on the fifth day of June A. D. 1824, and on divers other days and times between the day of the date of the said articles of agreement, and the day of bringing this suit, to wit, at, &c., take the time within which it should be incumbent on the said John Randel, jun., fully to perform and complete the said contract, to be less than four years from and after the first day of May next ensuing the date of the said articles of agreement; and so the said John Randel, jun., in fact saith, that the said The Chesapeake and Delaware Canal Company, have not kept their said covenant so by them made as aforesaid, but have broken the same, and to keep the same with

the said John Randel, jun., have hitherto wholly neglected and refused, and still do neglect and refuse, to the damage of the said John Randel, jun., of four hundred thousand dollars lawful money, &c."

*(Demurrer.)* To this breach the defts. demurred; after setting out the deed on oyer: "which being read and heard, they the said defts. say that the said seventh count of the said declaration as amended, and the matters therein contained, are not sufficient in law for the said John Randel, jun., to have or maintain his aforesaid action thereof against them the said defts., and that they the said defts. are not bound by law to answer the same, and this they are ready to verify; wherefore, by reason of the insufficiency of the said seventh count of the said declaration as amended in this behalf, the said defts. pray judgment, and that the said John Randel, jun., may be barred from having or maintaining his aforesaid action thereof against them, &c. And the said defts. according, &c., state and show to the court here, the following causes of demurrer, that is to say, "that there is no issuable fact presented by the said plff. in and by his said supposed breach of covenant assigned in his said seventh count, and that it is not stated or set forth how or in what manner or particular, or by what act or matter, the said defts. did take the time within which it should be incumbent on the said John, fully to perform and complete his said contract to be less than four years, from and after the first day of May next ensuing the date of the said articles of agreement; and also the said seventh count is further in other respects bad, uncertain, informal and insufficient," &c. Joinder in demurrer in the usual form.

The eighth count of the narr assigned a breach of the following clause:

"And it is further agreed as aforesaid, that in case the party of the first part shall from the default of the party of the second part, in any particular, be prevented from pursuing the due and best mode of executing this contract, or from entering upon or flooding lands for that purpose, the pecuniary damage sustained by him in consequence thereof, shall be certified by the engineer of the party of the second part for the time being, and on his certificate, which shall be final and conclusive between the parties, the party of the second part shall make to the party of the first part, such reasonable compensation and allowance as by the said certificate may be ascertained and fixed."

*(8th Breach.)* The breach was:

"Nevertheless, although the said John Randel, jun., was from the default of the said The Chesapeake and Delaware Canal Company, prevented from pursuing the due and best mode of executing the said contract, to wit, on the first day of October, A. D. 1825, and on divers other days and times between the date of the said articles of agreement, and the day of bringing this suit, to wit, at Newcastle county aforesaid, the pecuniary damage sustained by the said John Randel, jun., in consequence thereof, hath not been certified by the engineer of the said The Chesapeake and Delaware Canal Company for the time being, to wit, at, &c. And so the said John Randel, jun., in fact saith," &c. (as in the last breach.)

*(Demurrer.)* The demurrer to this count, after setting out the deed on oyer, proceeds: "which being read and heard, they the said defts., say that the said eighth count of the said declaration as amended, and the matters therein contained, are not sufficient in law, for the said John Randel, jun., to have or maintain his aforesaid action thereof against them the said defts., and *t*hat they the said defts. are not bound by law to answer the same, and this they are ready to verify; wherefore, by reason of the insufficiency of the said eighth count of the said declaration as amended, in this behalf the said defts. pray judgment, and that the said John Randel, jun., may be barred from having or maintaining his aforesaid action thereof, against them," &c. And the said defts. according, &c., state and show to the court here, the following causes of demurrer, that is to say, "that it is not stated in the said supposed breach of covenant assigned in the said eighth count of the said declaration, in what particular matters or things the alledged default of the said defts. consisted, took place and existed; or how or in what manner, or by what act of the said defts. the said John was prevented from pursuing the due and best mode of executing the said contract; and also further, the said eighth count is uncertain, informal, insufficient," &c. Joinder in demurrer.

These pleadings presented the two issues now before the court. The other pleadings in the cause were not considered or adverted to, except so far as they bore incidentally on the present discussion.

*Frame, Attorney General,* opened for the defendants.

The argument now arises on the demurrers to the seventh and eighth counts of the narr, being the fourth and fifth additional counts. The first, after setting out the contract by its substance, alledges that the time of completing the contract, should not be less than four years, and assigns as a breach, that the defts. the canal company, did take the time to be less than four years. To this there is a general and special demurrer.

We contend that the plff. has mistaken the nature of this contract. The argument, therefore, involves a construction of the instrument. The language of the clause is that "it is further understood and agreed as aforesaid, that the time within which it shall be incumbent on the said party of the first part fully to perform and complete the said contract, shall not be taken to be less than four years, from and after the first day of May." We say that according to the true meaning of this clause, it cannot constitute the foundation of an action at the suit of the plff. It cannot, according to its inherent principles. It might constitute a defence, supposing Randel was sued for not completing the canal in a shorter period, but it cannot be the ground of action. The term, take the time, or "the time shall not be taken" means that the time shall not be *deemed* or *understood* to be less than four years; and in this connection it implies that Randel should have *at least* four years to do the work; that he should not be obliged to do it in a shorter period. Now how is this to form the basis of an action at his suit? A freedom from obligation on his part; a negative abstract right securing him against any attempt to compel an earlier completion of the work; but not susceptible either of violation or abridgment. Suppose Randel actually prevented

from proceeding in the work, such interruption might be a wrong, and might on other grounds be the foundation of an action, but what relation could it have to this clause of the contract? How would this deem or take the time to be less than four years? There is no sequence as of cause and effect, nor any connection or relation between them. There are many clauses of contracts that will not bear a suit, being in their nature unsusceptible of actual violation. Such may be said generally are those of a mere precautionary nature, prescribing the limits to the party's own obligation; protecting him from the doing of any act, or the doing it in a particular manner or time; such, in short, as the party upon whom an obligation rests introduces to explain or limit that obligation, and which being in their own nature a shield and defence, cannot be the ground of active suit. They cannot be violated, and they execute themselves. Let us see by what acts they charge this company with taking the time to be less than four years. In one of the breaches the declaration of abandonment is the matter. The other side will contend that this provision is intimately connected with the power of abandonment, and prevents the exercise of that power within the four years. This we deny. The power of abandonment relates to the *prosecution* of the work; this clause to the *completion.* The language in the one case is, if he refuses or unreasonably neglects to prosecute the work; in the other it is that the time within which he shall be obliged fully to perform and complete the work, shall not be less, &c. If their construction prevails, it prevents the company from declaring the contract abandoned within the four years, however negligent Randel might have been in the prosecution of the work, and it thus repeals an important clause of the contract, and makes the company commit this immense work into the hands of the contractor, without any power to urge him to its completion.

But is the putting an end to the contract under the abandonment power, taking the time to be less than four years? Is the one a consequence of the other? The time remains and exists to the plff. and though the company might prevent his doing the work, and might render themselves liable in damages therefor, the plff. still had the time, and could not be compelled to do the work in less time. The argument is that because the company declared the contract abandoned, this act of dissolving the contract, compelled the plff. to do the work in a less period than that stipulated for. Again, they say the company *unlawfully* abandoned this contract, and thus took the time to be less, &c. Now if this abandonment was unlawful, it was merely void and not binding: it neither prevented the progress of the work nor took the time; but whether lawful or unlawful, it took not the time, nor had any relation to the time. The same may be said of the allegation that the company prevented the plff. from entering upon lands, &c., and thus took the time to be less, &c.

It thus appears that this clause cannot be the ground of an action, for in its own nature it works out its own enjoyment by the party for whose security it was introduced. It is an exemption from obligation on the part of Randel. The law would imply that he should do the work in a reasonable time; this clause explains that such reasonable time shall not be considered less than four years. It is dif-

ficult to conceive how this explanation can be the subject of an action on the part of Randel. So of the allegation that the company contracted with Clement, Blackstock and Vanslyke, and so took the time to be less, &c. How? Does a contract with other persons force Randel to execute his in a shorter period than that stipulated for? And even supposing the subsequent contract to conflict with the former, and that Clement & Co., in the prosecution of theirs interrupted or hindered Randel, such interruption might be a wrong and actionable, but upon no principle of construction could it be made a violation of this clause in relation to time.

As to the special causes of demurrer. There is no issuable fact stated by which the defts. took the time to be less than four years.

The breach contains only conclusions and not facts, and conclusions cannot be pleaded. Suppose we had traversed; what would the plff. have proved in support of his breach? If he made out the abandonment we should insist that it did not prove the issue; and so of the contract with Clement & Co. The breach should state premises, not conclusions; facts which may be met by proof. In *The State for the use of Bishop* vs. *Wilds' Adm'r. ante* 87, it was decided that the averment in the narr that the guardian did not perform his duty as guardian, and did not well and truly pay and deliver, &c. (in the words of the bond,) was too general, and did not constitute a sufficient breach.

Second. The demurrer to the eighth, (or fifth additional) count.

This breach also is a mere general denial of the terms of the contract, and is not sufficient. It does not set out any damage, and the breach is in this respect defective; for if no damage were sustained, then no damage could be certified. The contract is that if Randel should be prevented from pursuing the due and best mode of executing his contract, the pecuniary damage sustained by him in consequence thereof, should be paid by the company on the certificate of their engineer. The consequential damage only was to be certified. How then could there be a breach without damage actually sustained; and must not that damage be averred? The breach sets out that though the plff. was prevented from pursuing the due and best mode, &c., the engineer did not certify the pecuniary damage, without averring that any damage was the consequence of such prevention. Again. The plff. was prevented from pursuing the due and best mode of executing his contract. Is not this a conclusion? And should not the means of prevention be stated? Should we not have notice: and if it be matter of law let it go to the court. The jury could not decide such questions; if it arise upon facts for their consideration, why are not the facts stated? So much for the special causes of demurrer to the eighth count, which, however, we contend would be fatal in general demurrer.

But as to the general demurrer, or construction of this part of the contract. The count supposes that the company engage and guarantee that the engineer should certify the damages; and that they are liable for his neglect in this particular. We deny that this is the contract. It is merely a mutual submission of this matter to the engineer as an umpire for whose conduct neither party is peculiarly responsible. It *is* contrary to the letter as well as the spirit of the contract that

the company should be bound for the acts or responsible for the negligence of the engineer. "It is further agreed between the said parties," not that the canal company covenants and agrees with Randel. It is a mutual reference of the matter to an umpire; not a contract by one party that such umpire shall do certain acts. Again: if the company guaranteed this service to be done by the engineer, the word would have been *will* and not "shall" as it is. Is Randel a covenantor in this clause or not? If he be, then the company cannot be liable to this suit. He is equally bound with them for the acts of the umpire, and equally liable for his negligence. Establishing this, that there is a mutual binding and a common umpire, can it alter the case that such a reference or umpire is the engineer of the company. This was no part of the engineer's duty as such; *quoad hoc* he was not the agent of the company, but of both parties. And the company had no legal power to compel him to this duty. Why? Because there was no obligation on him as engineer, to certify these damages; and he was under no obligation to the company by reason of the reference, which he was not equally under to Randel. The one had no more control over him than the other. I exclude now all idea of private influence which the company might be supposed to have over him, for this is not the legal power I speak of. Then I say that the court will not in a doubtful case, suppose that this company had compelled themselves to guarantee an act which they had no power to compel. But this suit itself proves that this construction is not correct; for if the amount of damages be referred to the engineer, the question of what damage, and whether any, was submitted to him. If he has not certified any damage it cannot judicially appear to this court that there was any damage, for he is the only judge. If we are to infer any thing from the want of a certificate, we should presume that the engineer had done his duty, and determined that there was no damage.

In relation to deviations, prices, compensation, prosecution of the work, and finally all matters of dispute, the engineer was made the umpire. This shows the object of the parties in relation to this clause also.

*J. M. Clayton,* for the plaintiff.

First. The clause of the contract declared on in the seventh count does amount to a covenant, and a covenant that may be sued on.

Second. The clause in the eighth count is not a mere reference, nor a covenant binding equally on Randel as the company; but a covenant peculiarly obligatory on the company.

If this be not so what is the meaning of that clause of the contract where the company recognizes an obligation for other purposes than to pay for work already done. "And such determination shall altogether exonerate the said party of the second part, from every obligation imposed on them by the said contract, except to pay as aforesaid for work already done." Now take up the whole contract and construe it upon the principles laid down by the other side, and no such obligation can be found. But here is a distinct recognition of other obligations, which must arise from the clause now in dispute, or they cannot be found. Ingenuity can't change the record; so-

phistry cannot expunge words; and if the construction on the other side can't stand with the whole instrument it must fall.

Now as to the seventh count and the general demurrer.

The Attorney General defines "take" to be to *hold, agree to, deem* or fix upon. We are satisfied with this definition. He admits that according to this definition, the meaning of the clause is that Randel should have four years to complete the work in; and that the company should not hold or deem the time for that purpose to be less: we assign a breach that the company did deem or hold the time to be less, and did not allow him the four years, and yet they call this a legal abstraction and no covenant. I do not contend that this covenant allowed Randel the four years whether he was progressing towards its completion or not, but only that it allowed him that time, unless the contract was abandoned by them in due and legal form. If they undertook to judge of the progress of the work, they were to do so on the legal evidence; and that was only upon the certificate of the engineer. Covenants must be construed so as to support each other, not to destroy each other. Upon this principle we can reconcile the abandonment clause with the clause in question. The company were authorized to nullify or abandon the contract for the negligence of the contractor. This negligence was to be ascertained in a certain way, and the rule of evidence was prescribed. They were constituted the judge of this matter according to a fixed rule which must be followed. If they dissolve the contract on this evidence, it avoids all the covenants as well that of not taking the time to be less than four years as the others, except only the covenant to pay for work already done: but if they undertake to drive off the contractor and prevent his proceeding in the work without following this rule, they arbitrarily *take the time to be less than four years,* and thus break their covenant. With this construction both the clauses stand; without it, the power of abandonment swallows the other; or it merges this. We do not then, as the counsel supposed, contend that the company could not take the time to be less than four years, even though Randel were not doing any thing; but we do contend that they have but one process, and that is by abandoning the contract as stipulated in the contract. Negligence of the contractor only authorizes their interfering to stop him; no such negligence can be set up unless it has been certified by the engineer; and any interference on their part to prevent the execution of his contract within the four years, unless justified by this certificate, is unauthorized on the part of the company; is taking the time to be less than four years, violating the contractor's right to carry on the work during all that period, and a breach of their covenant to allow him that time. The counsel says this is *damnum absque injuria:* that if they drove Randel off, it was not taking the time to be less, &c. Surprising! One covenants, even according to the gentleman's own admission, to give another four years to do a piece of work, and kicks him off the next day, it is no breach of his covenant but a mere abstraction.

The causes of special demurrer to this count.

They complain that it is not shown in what manner they took the

time to be less, &c. I answer we are not bound to show it. Nothing is better established than that you need only negative the words of an affirmative covenant; and vice versa, where *the facts rest in the knowledge of the other party.*

Where the matter lies more properly in the knowledge of the other party, the breach may be assigned generally in the words of the covenant. And here the acts by which they took the time, &c., are in their knowledge. 8 *East* 81, 4; *Step. Plead.* 414; 9 *Co. Rep.* 60, *Bradshaw's case.* 1 *Wheat. Selw.* 375, where all the cases are collected.

There are but three exceptions to this rule, where the breach may not be assigned in the words of the covenant. These are first, where the plff. counts on a covenant for quiet enjoyment. He must show that he was evicted by *lawful* title, and a mere general assignment would be bad; second, in covenants against incumbrances, the breach must show that the incumbrances were lawful; and, thirdly, the covenantee in covenants of warranty, must show by what title he was evicted. These are the only cases in which the breach may not and ought not to be assigned in the words of the covenant. *Com. Dig. Plead. c.* 45, 47; 1 *Lord Raymond* 107; 1 *Lutw.* 329; 3 *Mod.* 69; 2 *Show.* 472; ditto 442; 1 *Chit. Plead.* 326.

The case in 2 *Cro. Jac.* 486, *Mills* vs. *Astel*, is not law; it has been overruled again and again. See 8 *East* 81; 2 *Show.* 472. 442. So the case in *Douglass* 214, *Jones* vs. *Williams*, has been repeatedly overruled, and is not regarded as law. 8 *East* 81; 1 *Bos. & Pul.* 642.

Less particularity is required where the facts lie especially in the knowledge of the opposite party. *Steph. Plead.* 414; *Com. Dig. Plead. c.* 26; 2 *Mass. Rep.* 433; *Marston* vs. *Hobbs.* Parsons, Chief Justice, notices the three cases already mentioned, as exceptions out of the general rule.

As to Bishop's case, that was an action of debt on a bond with a collateral condition. The statute of William and our own statute require the assignment in such actions to be very special. These are governed by the requirements of the statute, and are distinguished from actions of covenant. 8 *Johns. Rep.* 111; 1 *Lord Raymond* 478; *Douglass* 215; 1 *Wheat. Selw.* 376; *Lord Raymond* 107, *(Sed vide* 1 *Chit. Plead.* 329.*)*

I come now to the demurrer on the eighth count. The question is whose covenant is that contained in this clause? Is it a covenant at all; or merely a reference? In the first place I say that the construction given it on the other side destroys a material part of the contract as noticed under the last head. My idea of this clause is that it is a covenant that the company's engineer shall certify the amount of damages, and that this is as much their covenant as the agreement to pay the amount so certified. The engineer is the company's agent; his certificate is necessary to enable the contractor to get one cent, and yet they contend that the company have not engaged that he shall make this certificate, and that his refusal to do so is only the refusal of an arbitrator and the subject of no action as against his principal. In other parts of the same contract where the parties submit any matter to the engineer as a common umpire, they

do it expressly by that name, but here, different language is used, and it is agreed that the company's engineer *shall* certify the damage. Again, if this be a reference, what is to be done with the express and sweeping reference at the end of the contract of all matters in dispute to the engineer in chief. Now the engineer in chief was a different person from the engineer for the time being, or resident inspector, and if the first be a reference, there is a reference of the same thing to two several umpires. And if they were the same person it would be a double reference of the same subject matter. This cannot be so; the first is not a reference merely, but a covenant by the company. It is not to be supposed that Randel or any man of ordinary prudence, would refer such immense interests to the mere creature of the other party, a petty surveyor, not even the engineer in chief, an agent appointed by them and removable at their pleasure, without some security that he would act, if not with impartiality, yet so that he might derive some remuneration for his labor. That security he had in the obligation of the company that their officer should grant some certificate whenever damage accrued. Feeble to be sure was the security, but the very weakness of this protection shows that he was not willing wholly to abandon himself to their tender mercies. However much the contractor might have been interrupted and delayed by the company from the causes specified; and however great the damage that might thus have accrued, he could obtain absolutely no redress without this certificate; and with it only such as that officer should please to consider a compensation. To suppose that the company did not engage for his making the certificate, would be not only to do violence to the contract itself, but to the plainest principles of common sense and the most ordinary exercise of human prudence.

For many years the courts have been leaning in favor of a liberal construction of covenants, (3 *Bos. & Pull.* 565, 574;) here the court is called on to shut up a covenant and turn it into a reference upon principles of technicality that would have astonished a black-letter judge.

As to the special causes of demurrer. It was not necessary to alledge the pecuniary damage. The contract is not that when damage should arise the engineer should certify; but that when Randel should be prevented from pursuing the due and best mode, &c., the certificate should be made of the damage. Obstruction could not take place without damage, and the contract proceeds on that admission. 8 *Johns.* 86, (111,) *Smith et. al.* vs. *Janson.* As to all that part of the Attorney General's argument which insisted on the necessity of our setting out the acts by which the company prevented Randel from pursuing the due and best mode of executing his contract, I shall not reply further than by referring to the authorities heretofore cited in relation to the assignment of breaches in the words of the covenant.

Before the plaintiff's counsel proceeded,

*Mr. Jones* for the defts., asked leave to cite some additional authorities on the subject of assigning breaches.

The facts charged as constituting the breach must be plain; they must appear to the court to be such that if true, they undoubtedly

constitute a breach. We shall contend that there are no special exceptions to the rule of assigning breaches. Every case must depend on its own circumstances. The breach must state so much as to give the other party notice of what is relied on as a breach; the acts, or facts; not conclusions; and such as shall appear to amount to a breach of the covenant. The three cases mentioned are not exceptions because they are cases of warranty, &c.; but because they are such where the nature of the covenant requires a particular specification of the breach. So in all cases where the covenant is of this character. The old distinction between setting out breaches in actions in bonds with a collateral condition, and breaches of covenants, is abolished. There never was any distinction in reason, and there is now none in authority. It must in the nature of things be that it will depend on the nature of the covenant itself, whether a breach merely in the words of the covenant will be suffiient. 1 *Chit. Plead.* 329-30; 5 *Bac. Ab.* 18; *Pleas. & Plead.* 7 *Price* 550; 9 *do.* 43; 13 *Petersdorf Abridg.* 368, (257;) *Comyn's Rep.* 228; 7 *Petersdorf* 347.

*C. J. Ingersoll,* for the plaintiff.

From *Bradshaw's* case down to the cases in 8 *Johns.* and *Mass. Rep.,* the general rule has been that if the covenant be general, the breach may be general. If this be an exception to that rule it is for the deft. to show it. The breach may be general, especially where the knowledge of the manner of it is in the other party.

To the cases cited by Mr. Jones we answer that the matter pleaded was peculiarly in the knowledge of the party pleading. There was a necessary fact be stated; and, the principal case was a covenant for quiet enjoyment, and comes within the excepted cases.

What are the standards of a good breach? First. Notice to the party of the matter relied on; not of the evidence to prove that matter. Second. Notice to the court. Enough must be placed on the record to bar another suit for the same cause.

The causes of demurrer are first, that there is no issuable fact pleaded. We say "you did take the time to be less than four years:" and "you did not furnish a certificate of damage" are not these issuable facts? But they inquire, how did we take the time? Mr. Frame's explanation of taking the time to be less, is deeming it to be less," &c. I agree to the definition and say you deemed the time to be less than four years, contrary to your covenant. We can't tell them how; if it be a corporal act, they did it; if a mental operation, they conceived it; one or the other, it is a damage to us, a breach of their covenant, and the manner in which it was effected being in their knowledge, we are not bound to state the evidence by which we intend to prove it. And as to the certificate of damage. The pivot of this matter is the obstruction. If Randel was prevented by the company from pursuing the due and best mode of doing the work, the damage is inevitable—it results of course and need not be stated. The certificate was the thing covenanted for, and the neglect to give the certificate is the breach.

In deciding upon the general demurrers, it is only necessary to ascertain the meaning of the contract; that is, the intention of the

parties as expressed by the contract. It may properly be divided into twelve clauses:

1st. Randel is to do the work. Here he is the covenantor.

2nd. The company is to pay for it. Here they are the covenantors.

3d. The agreement for revising prices; which is a mutual covenant.

4th. The covenant for inspection of work.

5th. The ten per cent damages.

6th. A covenant in case of Randel's death in relation to ten per ct.

7th. The abandonment clause.

8th. In relation to altering the plan of the canal and conforming thereto.

9th. Covenant in relation to payment in full for the work when finished.

10th. The prevention clause—now in issue.

11th. The clause relating to the time allowed for doing the work: also in issue.

12th. The clause of umpirage.

In all the clauses except the 9th and 11th, Randel is more or less placed in the power of the company's engineer. It is to be remarked that the company acts through this agent: that for these purposes they are identical—the engineer is the company. We regard the company, then, in stipulating for these acts of their engineer as engaging that they will do such acts by their engineer. What were the respective duties of the parties. Randel was to dig a canal. The company were to furnish the ground and prevent intrusion or interruption. By whatever means then Randel was interrupted or delayed, damage was the necessary consequence, and the only question was as to the mode of ascertaining the amount of that damage. What was the contract? The company kept the power in their own hands; they resolved that these damages should be fixed only by their own officer, and in the nature of things as well as in the language of the contract they engaged he should certify some damage whenever damage accrued. If he certified only one dollar for a hundred Randel was remediless, but they were bound to have the certificate made. They call it a reference, and thus set up a new tribunal of judgment. If so they must show it. If Randel has relinquished his right to go to a jury to ascertain his damages; and committed his interests to the keeping of the agent of the company, it is but reasonable the company should be bound that their agent should do that without which the plff. could have no remedy. If it be not so, they ought to show it clearly. To suppose that Randel should give to this engineer the power of fixing the amount of damage, and bind himself to seek no redress but on the certificate of the engineer, without any obligation on the company to cause such certificate to be made, would be to suppose he was insane. But how can this be a reference? when the same subject is afterwards expressly referred to umpirage; and when this referee cannot but report against the company. The truth is the company made themselves, through their agent, the judge of the damage and were bound to certify it.

Then as to the clause in respect to the time. This must be construed in connexion with the clause authorizing the company to avoid the contract. By the latter the company or their engineer is made

the judge of Randel's diligence in prosecuting the work; by the former that diligence is referred to time and the company agrees not to take the time to be less than four years. While then Randel is proceeding with reasonable diligence in reference to this period the contract cannot be abandoned or the company violates this covenant not to take the time to be less, &c. The word *take* must have a sensible construction referrible to the subject matter of the contract and the connexion in which it is used. No word has a greater variety of significations. Webster has four columns of interpretations. It means here to ascertain, consider, judge of, or deem the time.

*George Read. jr.*, for the plaintiff.

The first question to be settled is, is this a covenant in relation to the time? There is no magic in the word. Nothing is required to make a covenant but a seal. Any thing under seal evidencing an agreement to do or not to do a thing is a covenant. The word covenant need not appear. Even a recital to an article of agreement has been construed into a covenant when the intention of the parties appears to have been such. 1 *Saund.* 320; *Levinz.* 274; 1 *Sidf.* 223; 6 *Viner* 381; 2 *Mod.* 87; 8 *Com. Law Rep.* 373; *Saltoun et al.* vs. *Houstoun et al.* The inquiry is "what was the object of the parties." If this amounts to a covenant, whether it be expressed as a proviso, exception or otherwise, it will be construed as such. An agreement on the part of the plff. may be construed into a covenant on the part of the deft. if such was the intention. 1 *Leonard* 324. This court will therefore look into the whole agreement, consider the relation of the parties, and the subject matter of the compact, and having discovered their intention will construe the clause in reference to such intention. What then is this clause in relation to time? Is it a stipulation, an agreement; does it confer any right, or impose any obligation? Has it in fact any meaning; or is it a senseless confusion of words; an abstraction; a mere nothing. The court cannot so construe it; they can't fail to consider it an agreement; and if an agreement it is a covenant. The law makes it so, and regards not whether it be more appropriately called a reservation, stipulation, proviso or agreement. The company promise, engage, agree that they will not take the time to be less than four years. They had the power of determining the contract in a certain manner; this was to be done by a discretionary act; they had to interpose an agent in the exercise of this discretion. Appended to this, as the only protection Randel had, they stipulated not to take the time to be less than four years—that is, they agreed to give him four years, preserving at the same time the privilege of abandoning in case of his negligence. Their engineer could thus measure his diligence only in reference to the time allowed. This then is an important clause; a covenant on their part. The legality of the abandonment is not now in dispute nor is it to be considered; it goes to a jury upon other issues. Without setting up that power as an excuse the question now is whether the driving Randel off within the four years is a violation of this covenant to allow him four years. But it is contended that here is no covenant because third persons were interposed. Third persons! The agents and servants of the company, identified fully with the company; stipulated for by the company, and responsible to the

company, In relation to these covenants the company acts necessarily by its agents, measuring work, certifying damage, certifying negligence &c. and the agent stands in place of the company. He is identified with them, and they responsible for him.

As to the special demurrers. Sir James Mansfield says in relation to these points, that they are not much to the credit of the law as a science. The breach here is stated in the very words of the covenant; which, according to the general rule on the subject, is sufficient. We have shown the only exceptions to this rule. If there be other exceptions the defts. ought to show them. The present case falls as well within the reason as the letter of the rule, for the facts constituting the breach are within the defts. own knowledge. This rule, with the specified exceptions, has been recognized in the Su preme Court of this country so late as 1817. 4 *Dallas* 436; 2 *Wheaton* 46, 62.

Eighth count. Is this a covenant; stipulation or agreement? Is not this it; that upon a ministerial act to be done by their agent, and which they stipulate shall be done, the company covenant to pay Randel the amount of damages to be certified by that agent. I say *ministerial* act; within the line of his duty as engineer. He was not at liberty to decide but in a certain way; nor could he decline the duty. What was the occasion of this stipulation? It was not entered into in view of a dissolution between them and Randel, and the hostile attitude subsequently assumed. At the time of the contract difficulties and embarrassments existed between the company and the owners of lands through which the canal was to pass which threatened to impede the progress of the work. Randel foresaw that such impediment might be a serious evil to him, and being unable to obviate it himself he protected himself under the agreement of the company that if he should be obstructed by their disputes with others they would pay him the pecuniary damages thereby sustained by him to be certified by their officer. By what officer? Not by any individual fixed on between them, but by whomsoever the company might have on the canal for the time being as resident engineer. Is it not ridiculous to call this a reference to umpirage where each party, selecting and agreeing upon an umpire, reposing confidence in the umpire, agree mutually to repose on his good faith and be bound for his proper action. And that too in a contract providing in another part for precisely such a reference in case of dispute.

*Rogers*, for plaintiff.

Important results depend on the decision of these demurrers; for it may be that if against a plff. it will be impossible for him to proceed. I therefore crave the indulgence of the court while I review some of the authorities and perhaps go over some of the ground heretofore occupied by my colleagues. I shall first consider the special demurrers:—And the question on them is whether a general assignment affirming an act stipulated against in a negative covenant is a sufficient breach. In assigning a breach you are not obliged to do so in the words of the covenant; but may do it according to the legal effect; in which case it must be observed that the breach be consistent and according to the legal import of the covenant; and that it be not too large. Secondly. You may assign the breach in the words

of the covenant, and the only exception to the rule is where the denying or affirming the words of the covenant does not necessarily amount to a breach. The other side undertakes to extend these exceptions, and they contend that the law is the same with respect to actions on bonds with a collateral condition and actions of covenant. The cases undoubtedly establish a distinction; but, if this distinction has been abolished, the rule in relation to covenants has been extended to bonds and not restricted, so that now it would seem a general assignment in either action would be sufficient. They say that a more particular assignment is necessary for the purpose of notice to them and to show the court that it amounts to a breach. The same objections would lie in every case and were taken in the case of *Gale* vs. *Reed*, 8 *East*. 81. The answer is that notice is unnecessary when the facts are in the knowledge of the other side. How is it on the authorities? All of them cited on the other side either fall within the general rule or are embraced by the exceptions which we have stated. The case in *Comyn* was on a covenant for quiet enjoyment; and so was the case in *Petersdorf*. 7 *Price* was a covenant for quiet enjoyment and to do other acts for the better securing an annuity. In 9 *Price* there was a specification of an act of hindrance which the court decided did not amount to a hindrance. It does not therefore reach the general principle. *Swift's dig.* 664; 1 *Salk.* 139; *Wils. Bac. Ab. cov't. I. p.* 84; 1 *Bos. & Pul.* 642; *Comyn's Rep.* 228; 7 *Petersd.* 347; 7 *Price* 550; 9 *Inst.* 43; 2 *Saund.* 178.

The general demurrer. Do these clauses raise an agreement? This they deny by their demurrer. They admit the fact stated and deny the law. Notice the clause "and such determination shall exonerate the company from every obligation except to pay as afsd. for work already done." Now on the construction contended for, where are these *other* obligations? There is here a distinct recognition of other obligations besides the payment of money and we contend that these other obligations arise from the clauses we have declared on. Now suppose this contract had been unlawfully abandoned by the company will it be denied that Randel might have had an action against them; and, if he could, upon what parts of the contract could he have sued except on the clauses now demurred to. And as to the ten per cent. reserved, amounting to near thirty thousand dollars, upon what could be found an action for that but on these clauses? If he had finished the work, the certificate of the engineer was to determine the price; was there no obligation on their part that their officer should make this certificate, and had he no redress against the company in case of his refusal to do so? If he had any it was on these clauses which are now demurred to as creating no legal liability. 8 *Mod.* 190; *Doug.* 518. Covenant by members of an association construed an individual covenant. 17 *Com. Law Rep.* 241 (6 *Moore* 199); Construed a covenant because the party could otherwise defeat the bond. 2 *Mod.* 266. So here if this be not a covenant of the company in relation to their engineer's certificate, they might deprive Randel of all his rights under the instrument, and escape from obligations directly assumed by that instrument. The rule is that where the interpretation of a covenant is doubtful it shall be

construed most strongly against the covenantor. 1 *New Rep.* 78; 1 *Selw.* 370.

*Mr. Jones,* for the defendants.

The objects to be obtained in alledging a breach are, to satisfy the court that if the statement of the plff. be true, he has beyond doubt a cause of action: to confine the jury to a certain issue and not permit them to wander in the mazes of prejudice or opinion, or be lost in the mist of uncertainty, confused by the multiplicity of subjects brought to their view; and, thirdly, to furnish the party deft. with reasonable notice of what he is called upon to defend.

I think the other side have made some mistake in their division of the subject into causes of general and of special demurrer. The objections we have taken to these counts are all sustainable as grounds of general demurrer and I shall so treat them. I divide them into objections going to the foundation of the action, denying that the contract is susceptible of founding an action upon; and into objections to the present mode of proceeding, equally fatal however to this present action. Let us first ascertain the precise legal effect of these clauses of the contract. I admit with the other side, that any agreement under seal is a covenant. We shall not contend about words, as we go upon a view of the spirit and intent of the whole contract in denying that these clauses constitute any ground for an action.

The plff. in this case is the principal contractor. He was to do a great work; the company were to pay him, and to pay him in a particular manner. Much of the argument has proceeded on the idea that the company were the principal contractors, when the reverse is true, Randel being not only "the party of the first part" but the principal party contracting. This only way in which the company is bound to pay is specified; it is the law of the parties. In the 8th count it is agreed that the payment shall be on a certificate of the engineer. This Mr. Randel agrees to be the law of his contract and in no other way can he recover. Neither in a court of law or equity. The breach implies a neglect of duty in the engineer; and it may be that an action would lie aga inst him, or equity would compel him to do his duty; but it is not possible for them to get behind the engineer and bring an action to recover damages from the company in any other way than on a certificate of the engineer. No court can possess jurisdiction to make them pay in any other way.

(Notices *Andrews* vs. *Ellison et al.* 17 *Com. Law Rep.* 24. cited on the other side; and *Alcorn* vs. *Savage,* reported in the note to that case. Cites the case of *Taylor et al.* vs. *Brewer et al.* 1 *Maule & Sel.* 290. as establishing the principle contended for. This case was not read by Mr. Jones, but he stated it to be a covenant to pay on the award of a committee and decided that it could not be recovered otherwise.)

Is it competent for the plff. to take these several clauses of one contract and make them separate covenants?

Reads the *"Prevention clause."* Construes it a covenant to pay what the engineer awards. He is the umpire or arbitrator. Randel agrees to take his damages in that way and not otherwise; and they each agree and contract that the damages shall be certified in this

22

manner and that such certificate shall be final and conclusive. If it be the duty of either party to cause the certificate to be made it was equally the duty of both; the stipulation is mutual. Does the fact of this person being the engineer of the company affect this relation? In a certain sense he is the agent of the company. He is their engineer—appointed to do the duties of an engineer; but in reference to the matter now in controversy, he is equally the agent of both parties. If it be impossible to make the person who in his general duties is the agent of one of the parties an umpire in a particular matter between the parties what is to be done with the last clause of of the contract which expressly appoints him such umpire by name? To take a proper view of the contract this individual must be regarded in two characters; as the agent of the company in some respects, and an independent, impartial judge and arbitrator in other respects. This additional character, this superadded entity, arises from the combined action of the canal company and Randel. He is the mutual agent of the parties, and each is equally bound for his conduct as they are alike bound by the result of that conduct. Randel indeed having, the greatest interest in the action of this umpire in relation to this certificate was peculiarly bound to see that such certificate was made. Yet they call him the agent of the company, and quote upon us the maxim *qui facit per alium facit per se.* This makes it a reference by both parties to one; and that, as they say, to prevent disputes between them. Strange indeed would it have been for these parties to enter into an important and narrowly guarded contract and to provide for the settlement of disputed and doubtful matters by a reference to one of the parties themselves. Logicians regard this argumentum ad absurdum as conclusive; and the argument on the other side involves no less an absurdity. The truth is, here the umpire is not the agent of either party but of both. But it is said that this cannot be a reference to the engineer, because there is a subsequent reference. If this be so, where is the absurdity? It would only follow that their were several persons appointed to make the same adjudication; or, if the persons be the same, that the matter would be covered by the last clause of reference. But the matters referred in the two clauses are not the same: and if they were, whether the first clause made the reference certain or not it is covered by the last and is thereby referred.

There are many instances of covenants on which a breach cannot, in the nature of things, be assigned. Here is a covenant to pay the amount of the certificate and that the certificate itself shall be conclusive. The last is as much a covenant as the first; a mutual covenant; but it is an executed and not an executory contract, and cannot be sued on. A breach cannot be predicated of it; it executes itself.

The general rule in relation to assigning breaches is the same in every contract whether under seal or not; and in tort as well as in contract. What is the breach of this prevention clause? although he was prevented from pursuing, &c. Prevented, how? It is not so good as a general allegation that the deft. had not performed. They not only do not tell us the particular of the neglect but do not even inform us its nature. Take the case of a clerk who had given bond not to commit default; would i be a good breach that he did commit

default without stating the nature of the default? And the gist of the breach is that the engineer had not certified the pecuniary damage when they have not even averred that any damage was sustained. But they say that damage necessarily arose from the prevention; that it is inferable. This is making the breach argue, which it cannot. The facts must be stated and not inferred. In a declaration of trespass stating the most grievous injury you must aver damage; and the reason is that facts must be stated and not left to inference however palpable. "Damages have not been certified"—Non constat that damages have been sustained.

The other side have laid down a general rule in relation to assigning breaches and have specified three exceptions. I deny the rule and I deny the specific exceptions; at least I deny that they are exceptions because they fall within a certain enumerated class. They are exceptions on more general grounds of pleading, more general than their rule. All facts, however particular, which are necessary to constitute the breach must be stated; not the evidence to prove the facts but the facts themselves. The deft. must be notified by the breach with what he is charged. What notice is it to say, you have prevented me from pursuing the due and best mode of executing my contract? Prevented, how? By what act; by what neglect; by what manner of conduct? The facts stated must be such that taking them to be true, the party has, necessarily, a cause of action; and they should present a certain issue. True, I find in the books limitations and exceptions; but not exceptions confined to particular cases but embracing particular principles applicable to all cases. One exception is that where the statement of facts would lead to great prolixity a more general form may be used, but still the party must state the nature of the breach: after all, the latitude which may be allowed must depend on the circumstances of each case referable to the general principles of pleading before stated.

They answer the case from *Price* by saying it falls within the class of exceptions being a covenant for quiet enjoyment. It does not relate to lands at all; and proceeds on the general principles stated. The same principles are well stated by Mr. Stephens in his very valuable work on pleading. *Stephens on pleading* 381.

Seventh count. In relation to taking the time:

Here was a contract for doing a very large work. No time was fixed for its completion; a reasonable time would have been implied by the law; instead of leaving Randel at the mercy of the other side in determining that reasonable time, since it is admitted the abandonment power would have authorized them to do so, the parties agree to fix on a minimum or shortest period for that time. How can this be a covenant; the foundation of an action? It is a protecsion and executes its own purposes. It is a credit given to him of time, and can't be taken from him. Suppose an attempt to compel the completion within the four years; it must fail, for he holds up the contract. It is not a thing that can be taken from him.

The breach is that the defts. "took the time to be less," &c., not specifying in what manner nor even explaining the meaning of the phrase, which is not very clear. Johnson gives one hundred and eighteen definitions to the word "take;" Webster, we have been informed

has four columns of interpretations. For my own part I cannot raise in my mind any distinct idea of taking time as the foundation of an action for the breach of a contract. The 47th definition of Johnson is to suppose; to understand or conceive in the mind; to conceive in thought or entertain in opinion. How can this be a breach of contract? *Actus non mens facit reum* is the universal rule of law.

But supposing this taking the time to be a breach of contract can there be a stronger instance of the uncertainty of a breach which is assigned in words that do not necessarily imply a breach but which in themselves as applied to a contract are almost unintelligible. If the phrase has a meaning that would apply to the contract so as to make a breach the party ought at least to have explained that meaning. If it alludes to a corporal act then that act should have been set out. If words be equivocal, having a meaning innocent as well as otherwise, they shall be taken most strongly against the pleader.

The Court took time to consider the case, and intimated that they would express their opinion during the approaching session of the Court of Errors and Appeals; when

The following opinion of the court was delivered by *Mr. Justice Harrington:*

HARRINGTON, J. The questions on these demurrers involve a construction of two clauses of the contract entered into between Randel and the canal company, and also several points in relation to the manner of setting forth the breaches on these parts of the contract.

The clause declared on in the seventh count is the following:

*(Time.)* "And it is further understood and agreed as aforesaid that the time within which it shall be incumbent on the said party of the first part fully to perform and complete the said contract shall not be taken to be less than four years from and after the first day of May next ensuing."

The meaning of this clause is the subject of present inquiry; the object with which it was introduced, the purpose it was intended to subserve, and the obligations which, according to the intention of the parties contracting to be gained from the whole instrument, it imposed. Meaning it must have; an *agreement* it expressly professes to be: it must therefore receive a sensible interpretation giving it validity and force, if force it can have consistently with the other parts of the contract.

At the first reading of this clause it is apparent that it was designed to afford a protection to the person who was about doing the work; and, though the expression is "the time shall not be taken," the meaning is clear that the *canal company shall not take the time*, &c. for it would be idle to make Randel stipulate against doing an act to his own prejudice. The word "agree" in a deed will make a covenant; and, though in the connexion it is applicable to both parties, it may be referred to that party upon whom the doing or not doing the thing agreed upon devolves. Thus in *Holder* vs. *Taylor* 4 *Cruise* 448. If a lessee for years covenants to repair, &c. provided always, and it is *agreed*, that the lessor shall find great timber, this is a covenant on the part of the lessor to find the timber, and not

merely a qualification of the lessee's covenant. 1 *Roll. Abr.* 518; 6 *Viner* 381, *Tit. Cov't. C.* 22, 23, *&c.* Upon the same principle the agreement *here,* referred, as it must be to the canal company, is a covenant on their part that they will not take the time within which it shall be incumbent on Randel to complete his contract to be less than four years; or, in other words, that they will allow him four years for the completion of the work.

Thus far there is no difficulty in attaching a sensible meaning to this part of the contract; but it is said that this cannot be the true construction since the canal company are by another part of the contract expressly authorized, on a certain event, to declare the whole contract to be abandoned, and thus virtually to shorten the time allowed by this construction for the completion of the work, and, as the power to put an end to the work within the four years is expressly given, it is forcibly argued that the clause in question cannot be construed into a covenant to allow the four years. If it be true that these parts cannot stand together we must look for some other meaning to that one which is the subject of construction; but let us see if they cannot be construed together so as to harmonize and each have force, *ut res magis valeat quam pereat.*

The clause in the contract that authorizes the canal company to annul it precedes the clause now under consideration; and the latter appears to be rather a qualification or restriction of the former. That is as follows: And it is further agreed that if the opinion of the engineer in chief for the time being, in the employ of the party of the second part (the canal company) shall be that the party of the first part refuses or unreasonably neglects to prosecute this contract, such engineer may certify the same to the said party of the second part, and, on his certificate, the said party of the second part shall have the power of determining that he has abandoned it; and such determination shall altogether exonerate the said party of the second part from every obligation imposed on them by the said contract, except to pay as aforesaid for work already done.

This affords a key to the phrase "shall not take the time" &c. about which there has been so much refining. The company were authorized to judge of the diligence of the contractor, and by necessary consequence to determine the time necessary for him to complete the work. In reference to this power they add a covenant that they will not take the time for this purpose to be less than four years. And a very reasonable stipulation it was, even though the company still retained the power to judge of the diligence of the contractor, and to turn him off for unreasonable negligence. Time enters materially into this question of diligence, and without restriction in point of time the company might have required of Randel such extraordinary diligence as to complete the work in a much shorter period than four years. The provisions stand well together. The plff. undertook to make and complete a certain stipulated portion of the canal, and the defts. undertook to compensate him for the work in a specified manner. It was a work of great labor on the part of the plff., and it was all important to the defts. that it should be completed in a reasonable time; and therefore they introduced the clause in the contract, that if the engineer in chief should be of opinion that Randel unreasonably neglected to prosecute the work, and

should certify that opinion, they, the canal company, should have the power to declare the contract abandoned, and thus to annul it. And, on the other hand, as the work which the plff. had undertaken to perform was one of great labor, requiring large expenditures of money and the necessary consumption of considerable time, it was deemed proper for his security to insert the understanding and *agreement* "that the time within which it shall be incumbent on the plff. fully to perform and complete the said contract, should not be taken to be less than four years from and after," &c.

This is obviously not a mere covenant on the part of Randel, that he would complete the work within the time. If that only had been the intention of the parties, a different form of expression would have been used. The defts. say it is not a covenant on their part which binds them to any thing. Why was it introduced, forming as it does a distinct clause in the contract, if it were not intended to be binding on the party using the language to some efficient purpose? It is obviously not the language of Randel to the canal company. If it was designed merely as his covenant to the company to complete the canal within four years, other words would necessarily have been used, such perhaps as these: it is agreed that the said John Randel shall complete the work within four years. On the contrary, the words employed in the instrument are, it is agreed that the time within which it shall be incumbent on him fully to perform and complete the said contract, *shall not* be taken to be less than four years. Who speaks this? The canal company. Then for what purpose is it spoken? In a solemn contract under seal, we are not to reject these words as senseless and having no meaning, as a mere abstraction as it has been called at the bar, not binding upon the party using them to any efficient purpose, or to any beneficial end to the party to whom they are addressed. In no case shall words be rejected as senseless, if a meaning can be attached to them consistently with the intention of the parties. This is a distinct, separate and independent clause of the contract. We may therefore infer that it was deemed important by the parties for some end or purpose. They had some design and intention; and it is our business to ascertain this intention, not from this isolated clause only, but if necessary from the whole instrument, and according to the reasonable sense of the words. If there be any ambiguity then such construction shall be made as is most strong against the covenantor, for he might have expressed himself more clearly. The meaning of this clause we conceive to be simply this, that the canal company undertook not to do any act by which this contract should be taken out of the hands of the plff. nor would declare the contract abandoned, nor compel him to leave the work short of the stipulated time, unless the engineer should be of opinion and certify that he refused or unreasonably neglected to prosecute the work. In that event, and in that event only, could they declare the contract abandoned and annulled, and proceed to dispose of the subject matter, (to use the language of the instrument,) in the same manner as if the contract had never existed. When the plff. undertook to perform this work, and the defts. agreed to pay him the stipulated price, he acquired certain rights which the canal company could not violate with impunity. From the perform-

ance of this contract he might have acquired great profits. That he believed the contract to be advantageous is evident, or he would not have entered into it. Without this stipulation as to time, the law would have given him a reasonable time to execute his contract; but he did not choose to rely upon this, but stipulated for a given time. The time therefore, became the agreement of the parties, and every agreement under seal is a covenant, for the breach of which this action will lie, and all other remedies are extinguished. For where a party agrees under seal to do or forbear to do a thing, the action of covenant is the only remedy for a violation of the agreement where damages are unliquidated, and depend in amount on the opinion of a jury, and all other remedies are excluded.

With this understanding of the contract the breach sets forth that the said company did, &c., "take the time within which it should be incumbent on the said John Randel, jun., fully to perform and complete the said contract to be less than four years," &c., and to this the defts. not relying on any certificate of negligence and consequent abandonment of the contract—admitting the facts—demur in law, and present the question to the court whether the plff. on the present state of the pleadings has shown a legal cause of action. According to our construction of the contract he has. We have seen that the canal company covenanted not to take the time within which Randel should finish the work, to be less than four years; that is, according to our construction, to give him four years to do it in; he at the same time agreeing to use the necessary diligence for that purpose, and that the engineer of the company might certify the want of such diligence, and upon his certificate the company might avoid the contract. Without such certificate and avoidance the company were not authorized to abridge the time, or take it to be less than the time specified, and the doing so is a breach of their contract, actionable in law.

We are next to consider whether the breach of this covenant is set out with sufficient certainty. The special causes of demurrer are "that there is no issuable fact presented by the said seventh count, and that it is not stated or set forth how or in what manner or particular, or by what act or matter the said defts. did take the time within which it should be incumbent on the said John fully to perform and complete his said contract to be less than four years," &c.

The general rule on this subject is that the breach may be assigned in the words of the covenant, if such general assignment necessarily amounts to a breach. This qualification, which however is not usually appended to the rule as laid down in the books, embraces all those cases which are admitted to be exceptions to the general rule; that is, they are cases where a general negation of the words of the covenant would not necessarily constitute a breach. 1 *Wheat. Selw.* 375; 8 *East* 81-4. And there is another important rule equally violated by the excepted cases, that more particularity is required in assigning the breach where the matter rests peculiarly in the knowledge of the party pleading. Thus in covenants for quiet enjoyment, and of warranty, the general assignment is insufficient, for it doth not appear that the party was disturbed or evicted by lawful title; and it lies peculiarly in the knowledge of the party alledging

the eviction to show by what title he was evicted. So in covenants against incumbrances.

The assignment should place sufficient on the record to show the court that, if true, it amounts to a breach of the covenant; and to give the other party reasonable notice of the matter relied on, not of the proof of that matter, but of the thing to be proved. The first is *done* whenever a general negation or affirmance of the words of the covenant amounts to a breach; particularity in the last is *excused* where the matter lies properly in the knowledge of the other party, or where it tends to great prolixity.

Recurring to the construction we have given to this part of the agreement, it will appear that the covenant of the company in effect is to allow Randel four years for the completion of this canal, with a certain qualification not now necessary to mention. The breach of this covenant is that the company did not allow him the four years, and this presents an issue proper for the consideration of a jury. At all events it amounts, if true, to a breach of the covenant, and as the facts constituting the breach are entirely within the knowledge of the defts., the purposes of notice to them do not require a more particular statement. We here leave the words of the contract and of the breach, and substitute what we understand to be their meaning; but it differs not whether the assignment is that the company did not allow four years, or did take the time to be less than four years.

*(Prevention.)* That part of the contract declared on in the eighth count is as follows:—

"And it is further agreed as aforesaid that in case the party of the first part shall, from the default of the party of the second part in any particular, be prevented from pursuing the due and best mode of executing this contract, or from entering upon or flooding lands for that purpose, the pecuniary damage sustained by him in consequence thereof shall be certified by the engineer of the party of the second part for the time being; and, on his certificate which shall be final and conclusive between the parties, the party of the second part shall make to the party of the first part such reasonable compensation and allowance as by the said certificate may be ascertained and fixed."

The breach assigned on this clause is, that, although Randel was from the default of the company prevented from pursuing the due and best mode of executing the said contract, the pecuniary damage sustained by him in consequence thereof hath not been certified by the engineer of the said company for the time being: and the sufficiency of this breach, in a general point of view, depends on the question whether the above clause amounts to a covenant on the part of the company that their engineer should certify this damage whenever it should arise, or whether it is a reference by both parties to a common umpire. In looking through this whole contract it is to be observed that the canal company have generally shielded themselves by confining their responsibilities to the adjudication of their own engineer, who is frequently made the sole arbitrator and umpire *eo nomine*; and in this instance also, they have limited the amount of their liability to the certificate of that officer. But the question here is whether, in a given case arising from their own default, and where

Randel's redress was confined in amount to the certificate of their officer, they have not covenanted that such officer should do that without which Randel could have no redress. The damage to the plff. arises from the default of the company. The amount of that damage is to be ascertained by their own officer; appointed by them, responsible to them, and removable at their pleasure. Randel agrees to be bound by this; it is his contract and, prudent or imprudent, he must abide by it; but is it to be conceived, is it a sensible construction of the contract, that he relied on this remedy, thus restricted, without any obligation on the part of the company that their agent should certify at all. Unless the words of the contract clearly convey this meaning, the absurdity of the arrangement would prohibit such a construction. Those words certainly do not require such a construction; if indeed they do not directly favor the opposite position. It is *agreed* that in case Randel shall from the default of the company be prevented from proceeding in the best manner, the pecuniary damage *shall* be certified by the engineer of the company for the time being, &c. The effect of the certificate is afterwards defined; but on these words—either on a fair reading of the single sentence, or connected as it should be with the context in a reasonable construction of the whole contract, it does amount, in our view, to an agreement on the part of the company that their engineer should certify the damage in case any such arose from their default. This construction moreover derives force from the clause almost immediately following, wherein a reference to arbitration is expressly made of all matters of dispute or difference in opinion in relation to the contract or arising under it. The subject matter of this clause was not suitable for reference; a dispute in relation to it could not have been anticipated; it was agreed by both parties that in case of damage from certain specified causes, the amount thereof should be ascertained by certificate; and as Randel agreed that the agent of the other party might make that certificate, and that he would be bound thereby, it reasonably if not necessarily followed that the company engaged the certificate should be made.

If this be the meaning of the contract, the breach thereof is well assigned in the words of the covenant according to the principles before stated, and which are fully recognized in the case of *Gale* vs. *Reed*. 8 *East* 80. The breach in that case is strikingly similar to this. The deft. covenanted to employ exclusively the plff. to make cordage for his friends, and not to employ any other person, nor to carry on the business of rope-maker, &c. The breach was that the deft. did carry on the business of rope-maker, &c., and made cordage for divers persons, &c., and did not nor would employ the plff. to make such cordage but neglected so to do, and employed divers other persons, &c. The deft. demurred, assigning for cause "that plff. had not shown any and what particular person or persons for whom the deft. made cordage; or any and what particular *quantities* or *kinds* of cordage the deft. so made; nor in what *manner or by what acts* he carried on the business of rope-maker, &c. Lord Ellenborough said the answer was that as the facts alledged in the breaches lie more particularly in the knowledge of the deft. than of the plff. there was no occasion to state them more particularly. So in this

case the causes assigned for demurrer are that it is not stated in what particular matters or things the alledged default of the said defts. consisted, took place or existed; or how or in *what manner* or by what *act* of the said defts. the said John was prevented from pursuing the due and best mode of executing his contract. The answer is that these facts lie more properly in the knowledge of the defts. than of the plff., and need not be stated with more particularity.

Another ground was taken in the argument, though not assigned in the demurrer, against the sufficiency of this breach; that there is no averment that Randel had sustained any damage by being thus prevented from pursuing the due and best mode of executing his contract. To this it was replied that the damage was a necessary consequence upon the prevention, and was to be inferred. But this is deducing from the facts stated, another fact material to the breach, and without which the breach is not perfect. It is true that the failure to certify and not the failure to pay, is the gist of the complaint; but how does it appear from the facts here stated on this record that there was any damage sustained, or any to certify? The covenant is, as we have construed it, that in case Randel should, from the default of the canal company, be prevented from pursuing the due and best mode of executing his contract, &c., their engineer should certify the pecuniary damage sustained by him *in consequence thereof.* Now how does the allegation that he was so prevented, and that the company's engineer did not certify, cover the whole ground without an averment that damage was sustained. The engineer was not by the contract, to certify damage as the necessary result of the prevention, but only "the pecuniary damage sustained in *consequence thereof;*" and though it may be true that the plff. was prevented as he alledges in his breach; and though damage may be the probable consequence of such prevention, yet it should have been stated that such damage *was* the consequence of and did arise from the prevention to bring the assignment within that rule before alluded to, which requires that so much should be placed on the record as that if true, there must have been a breach of the covenant, and the plff. must have a cause of action. An important fact is here left to be inferred, and the breach is consequently not well assigned. That fact is essential to the plff.'s. cause of action, and the failure to aver it is bad on general demurrer. Judgment must be rendered against the demurrant on the seventh count, and in his favor on the eighth. And let these judgments stand, as both sides have heretofore been allowed to amend repeatedly; and they have come down to the argument and to judgment on these demurrers with their eyes open. There will never be an end to this cause if the parties are to demur when they please, and amend as often as the demurrers shall be ruled against them.

The counsel for the canal company moved for leave to withdraw their demurrers and to plead over, which was refused by a majority the court without argument. (*a*)

(*a*) Tidd lays down the rule to have been formerly that after a demurrer the court would not permit an amendment without the consent of the adverse party. But he says that rule is relaxed, and it is now settled that after demurrer and joinder, either party may amend of course; and even

*(Judgment.)* The judgment on the demurrers was entered in the following form:—

"This cause having been set down for argument at the May term 1833, on the demurrers to the fourth and fifth additional counts in the plff's. declaration, being the two last counts in the said declaration, on the day assigned for argument thereof, to wit: on the Satur-

where the proceedings are entered on record and the demurrer has been argued, the court will give leave to amend *where the justice of the case requires it, and there is any thing to amend by.* But this is altogether discretionary in the court, and it is not usual to amend after demurrer argued, and the *opinion of the court is known.* 1 *Tidd's Practice* 656; *Hardwick* 171; 1 *Lord Raymond* 668; 2 *Strange* 734, 954, 976; *Hardwick cases, &c. &c., vid. infra.*

*Jordan* vs. *Twells, Cases Temp. Hardwick,* 171, where the plff. has lost a trial the deft. will never be admitted to amend his plea.

*Crockett* vs. *Jones,* 2 *Strange* 734. After argument on demurrer the plff. was allowed to amend his replication by entering continuances. *Hales* vs. *Hales* was cited where such an amendment was refused by C. B. *Sed Per Cur.* The authorities of our own court warrant it, and let the replication be amended on payment of costs.

*Bishop* vs. *Stacy,* 2 *Strange* 734. "After a special demurrer and joinder and argument, the plff. had leave to amend the bill upon the file. And this was granted upon debate."

*Rex* vs. *Ellames,* 2 *Strange* 976; *more full in Cases Temp. Hardwick* 42. Information in the nature of a quo warranto against the deft. as mayor of Chester. He justified under a charter by which the mayor is to be chosen by the citizens of Chester and *suburbs;* and laid his election by a majority of the citizens of Chester. Demurrer and joinder: and when the case came into the paper, deft's. counsel moved to amend by inserting the *suburbs,* and showed by affidavit that the prosecutor had not lost a trial, &c., "and after long debate and many cases cited, the court gave leave to amend and chiefly for reasons peculiar to this case."

*Robinson* vs. *Rayley,* 1 *Burrows* 321. In this case, which is also cited by Tidd, the court *refused* the leave to amend.

*Douglass* 330 *and* 620 are both cases of special demurrer merely.

*Solomons* vs. *Lyon,* 1 *East* 372. Deft. pleaded a *sham* plea; plff. replied and deft. demurred *specially,* The court here allowed plff. to amend because the plea was a sham one, and in *Pierce* vs. *Blake, Salk.* 515, they threatened to fine an attorney for false pleading.

After argument on demurrer, plff. moved to amend his narr, which was granted, the merits of the case not coming in question on the argument, *only the form of the pleading.* Secus, after argument on the merits and nothing to amend by. *Barnes* 9; *Impey* 297.

*Sayer's Rep.* 117. In an action against bail the court refused to give leave to withdraw a demurrer and amend, after the demurrer had been argued and the opinion of the court known.

*Giddins* vs. *Giddins, Sayer's Rep.* 316, cited in *Tidd,* and mentioned in *Burrows' Rep.* as a case of amendment after the opinion delivered; was after argument only. It was on a *special* demurrer; the court had given no opinion and the rule was made absolute *without defence.*

*Abercombie* vs. *Parkhurst,* 2 *Bos. & Pul.* 480. On general demurrer, the court gave their opinion against the demurrer and refused leave to amend.

*Hosier, &c. Ex'rs.* vs. *Lord Arundel,* 3 *Bos. & Pul.* 11, 12. Special demurrer. The court expressed their opinion in favor of the demurrer.

day of the first week of the said term here comes as well the said John as the said The Chesapeake and Delaware Canal Company, by their attorneys aforesaid, and on motion of the attorney of the said company desiring further time, a day further is given to the parties aforesaid here until the Saturday next after the said day so assigned for argument as aforesaid, and during the said term; on which day here comes as well the said John as the said The Chesapeake and Delaware Canal Company by their attorneys aforesaid, and hereupon the premises being seen and by the judges here fully understood, and the said demurrers being fully argued on both sides by the said attorneys on the said day, and also on Monday, Tuesday and Wednesday of the succeeding week; and because the said judges here will advise themselves further of and upon the premises before they give judgment thereon, a day is further given to the parties aforesaid here until the ninth day of June next after to hear their judgment thereon, because the same judges here, thereof, not yet, &c., to which said last mentioned day the said court is for this purpose adjourned: on which day here comes again as well the said John as the said The Chesapeake and Delaware Canal Company by their attorneys aforesaid, to hear the said judgment: and hereupon the said premises being again seen and considered, and it appearing to the said judges that the demurrer of the said company to the said fourth additional count, being the seventh count in the amended declaration aforesaid contained, which confesses the matters in the said count mentioned, to wit, the said contract or articles of agreement so set out on oyer as aforesaid, and the fact that the said The Chesa-

*Shepherd* then applied for leave to amend, "But the court said, this was not a case in which they ought to depart from a *general rule that after argument amendments are not allowed,*" &c.

*Hamilton* vs. *Wilson et al,* 1 *East* 391. General demurrer. The court expressed their opinion against the demurrer. "*Holroyd* then asked leave to amend, which (it being after argument on the demurrer,) was denied. And judgment for the deft."

*Cooke* vs. *Birt,* 5 *Taunt.* 765; 1 *Marsh.* 338. After demurrer argued the court would not permit the plff., in an action against the sheriff, to amend. And where a plea was held bad on argument on a special demurrer, the court of Common Pleas refused amendment although it was stated that the matter of the plea was a *bona fide* statement. 7 *Moore* 244; 1 *Harrison's Digest* 50.

*Fisher* vs. *Cowgill Ex'r. of Allston.* Debt on testamentary bond suggesting breaches. Deft. demurred to the narr. After joinder but before argument Clayton asked leave to amend his narr, which the Supreme Court (*Johns, C. J.*) refused. *Kent, October term,* 1830.

*Easton use Russel* vs. *Jones, post page* Supreme Court, Newcastle, March term, 1831. After demurrer argued, and the court (by *Harrington Chief Justice,*) had pronounced their opinion, the deft's. counsel moved for leave to plead over, which was refused. The demurrers in this case were general and special.

*Cubbage* vs. *York.* Common Pleas, Kent, November term, 1829. The deft. demurred specially to the plff's. declaration; and, after argument, the court granted the plff. leave to amend because the defect was matter of form only, and judgment had not been pronounced. They said expressly that it was because the declaration was ill only on special demurrer.

See the case of *State use of Godwin* vs. *Collins, post.*

peake and Delaware Canal Company did on the first day of October, A. D. 1825, to wit, at Newcastle county afsd. and on the 5th day of June, A. D. 1824, and on divers other days and times between the day of the date of the said articles of agreement and the day of bringing this suit, to wit, at Newcastle county aforesaid, take the time within which it should be incumbent on the said John Randel, jun., fully to perform and complete the said contract to be less than four years from and after the first day of May next ensuing the date of the said articles of agreement, as the plff. in the said last mentioned count hath declared; it seems to the said judges that the said fourth additional count of the said declaration as amended, being the seventh count of the said declaration and the matters therein contained are sufficient in law, for the said John to have and maintain his aforesaid action thereof, against them the said defts., as the said John hath above thereof alledged; wherefore the said John ought to recover, and the court doth hereby order and adjudge that he do recover his damages by reason of the premises and of the non-performance of the said breach in the said fourth additional count mentioned against the said The Chesapeake and Delaware Canal Company, together with such costs as the law by reason of the premises will allow: but because it is unknown what damages the said John hath sustained on that occasion the judges who give this interlocutory judgment do, at the motion of the plff.'s attorney in this action, make an order in the nature of a writ of inquiry to charge the jury attending at the next court after the said judgment is given to inquire of the damages and costs sustained by the plff. in this action by reason of the premises; which inquiry shall be made and evidence given in open court and after the inquest have considered thereof they shall forthwith return their inquisition under their hands and seals to the end that the court may proceed to judgment as upon inquisition of that kind returned by the sheriffs, agreeably to the act of the general assembly in such case made and provided.

And because the said plff. in the said fifth additional count in the said declaration, being the eighth count in the said declaration contained, hath not set forth or shown any sum or amount of pecuniary damage by him sustained by reason of the premises in the said count mentioned, it seems to the court here that the said last count of the said declaration and the matters therein contained are not sufficient in law for the said John to have or maintain his afsd. action thereof against them the said defts., and that they the said defts. are not bound in law to answer the same; wherefore by reason of the insufficiency of the said eighth count of the said declaration the demurrer of the said defendants to the said count is allowed by the court here and of the said last count the said defendants have judgment."

*Clayton, Ingersoll, Rogers* and *Read,* for plaintiff.
*Frame* and *Jones,* for defendants.